IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,

        Plaintiff,                        CR 03-432-HA

    v.

                                                  OPINION
                                                  AND ORDER
J. KENNETH STRINGER, III, et al.,

        Defendants.

Karin J. Immergut
United States Attorney
Allan M. Garten
Assistant United States Attorney
1000 S.W. Third Avenue
Portland, Oregon 97204
        Attorneys for Plaintiff

Janet Lee Hoffman
Carrie Menikoff
Brandon Williams
1000 S.W. Broadway, Suite 1500
Portland, Oregon 97205
        Attorneys for Defendant J. Kenneth Stringer, III

John S. Ransom
Craig J. Gabriel
Ransom Blackman LLP
1001 S.W. Fifth Avenue, Suite 1400
Portland, Oregon 97204
    Attorneys for Defendant William N. Martin

Ronald H. Hoevet
Hoevet, Boise & Olson, PC
1000 S.W. Broadway, Suite 1500
Portland, Oregon 97205
    Attorney for J. Mark Samper

HAGGERTY, Chief Judge:

On September 23, 2004, the grand jury issued a third superseding indictment (hereinafter referred to as the Indictment) charging defendants with fifty counts of conspiracy and securities fraud. Defendants are former executives of FLIR Systems, Inc. (FLIR). The Indictment alleges that defendants acted in concert to inflate FLIR's revenues through a series of fraudulent revenue recognition and accounting practices in an attempt to defraud FLIR, its Board of Directors, its shareholders, its auditors, and the United States Securities and Exchange Commission (SEC).

Defendants have filed numerous procedural motions challenging the Indictment. Oral arguments were heard on May 10, 2005. The court rules on each in turn below.

**The Indictment**

The Introduction of the Indictment sets forth defendants' alleged criminal intent to conceal its fraudulent activity from the SEC, FLIR's shareholders, and the public. It identifies the relevant persons and entities, how defendants were compensated by FLIR, FLIR's financial statements and earnings reports, the applicable revenue recognition rules, and defendants' scheme to defraud, which the government alleges occurred between January 1998 and April 2000. It explains the six allegedly fraudulent revenue recognition devices that defendants used to inflate FLIR's quarterly sales: (1)

recording revenue on false sales; (2) recording revenue on products shipped to a customer that were different than the products ordered by the customer; (3) recording revenue on contracts that were subject to "side letters" with customers providing rights of returns; (4) recording revenue on "sales" that were, in fact, rental agreements between FLIR and the customer and in which title to the product did not transfer to the customer; (5) recording revenue on sales with unmet consignments; and (6) recording revenue for improper bill and hold transactions.

The Introduction goes on to explain how Samper and Stringer allegedly inflated earnings through fraudulent accounting devices: (1) by understating millions of dollars in expenses; (2) by overstating revenues; and (3) by overstating income and understating expenses in the company accounts.

Count 1 of the Indictment charges defendants with conspiracy and incorporates by reference the allegations in the Introduction. It alleges the manner and means of the conspiracy, such as the use of fraudulent revenue recognition and accounting devices and material misstatements, and provides further allegations regarding false books, records, and accounts that defendants allegedly used to further their scheme. It describes each defendant's alleged role in the scheme and describes the relevant facts leading to the discovery of the scheme, including the auditors' determinations that the allegedly fraudulently inflated revenues and understated expenses required FLIR to restate its financial statements. The remaining counts incorporate the relevant facts set forth in the Introduction and Count 1.

//
//
//

### Defendant Martin's Motion to Dismiss the Indictment for Failure to Comply with FRCP 7(c)(1) (Doc. #145)

Defendant Martin moves to dismiss the Indictment because it is not "a plain, concise, and definite written statement of the essential facts constituting the offense(s) charged . . . ." Fed. R. Cr. P. 7(c)(1). Alternatively, Martin moves to strike certain language in the Indictment. *See* Fed. R. Cr. P. 7(d).

The Sixth Amendment guarantees a criminal defendant a fundamental right "to be informed of the nature and cause of the accusation." *Givens v. Housewright,* 786 F.2d 1378, 1380 (9th Cir. 1986) (quoting U.S. Const. amend. VI). An indictment is constitutionally sound if it furnishes "the defendant with a description of the charges against him in sufficient detail to permit him to prepare his defense, [so that] the defendant is prosecuted on the basis of facts presented to the grand jury, [and is able] to plead double jeopardy against a later prosecution . . . ." *United States v. Miller*, 771 F.2d 1219, 1226 (9th Cir. 1985) (citation omitted); *see also United States v. Morlan*, 756 F.2d 1442 (9th Cir. 1985) (recognizing that the two corollary purposes of an indictment are to ensure that the defendant is being prosecuted on the basis of facts presented to the grand jury and to allow the court to ascertain the sufficiency of the indictment).

Language is appropriately included in an indictment if it pertains to what the government intends to prove at trial. *United States v. Giese*, 597 F.2d 1170, 1178 (9th Cir. 1979). The government is allowed to present hearsay evidence to the grand jury, and it is proper to include such evidence in the charging indictment. *Jack v. United States*, 409 F.2d 522, 523 (9th Cir. 1969) (citations omitted). However, when language in the indictment is unnecessarily inflammatory,

prejudicial, and irrelevant to the crimes charged, Federal Rule of Criminal Procedure 7(d) operates to protect the defendant by granting the court discretion to strike such language.

After reviewing the challenged language, the court finds that the Indictment does not contain language that is inflammatory, prejudicial, and irrelevant to the crimes charged. In addition, the government asserts that it intends to prove every factual allegation contained in the Indictment. If, however, the government fails to prove any of the facts contained in the counts, defendants may move to strike the allegations prior to the case being submitted to the jury. Defendant Martin's motion is denied.

**Defendant Martin's Motions to Dismiss Counts 14 and 15 (Docs. #148, #156)**

In its briefing and at oral argument, the government withdrew Count 15.

Count 14 alleges that defendants are guilty of falsifying books, records, and accounts in violation of 15 U.S.C. §§ 78(m)(b)(2)(A), 78m(b)(5), 78(ff), and 17 C.F.R. § 240.13b2-1. According to the Indictment, beginning in or about September 1998 until April 2000, defendants knowingly and intentionally falsified books, records, and FLIR accounts. Martin asserts that the count fails for lack of specificity as to the dates and conduct.

As stated above, an indictment must adequately apprise the defendant of the offenses charged against him. In determining whether an indictment meets this requirement, the court must read the indictment as a whole, read it so as to include facts that are necessarily implied, and construe it according to common sense. *United States v. Blinder*, 10 F.3d 1468, 1471 (9th Cir. 1993) (citation omitted).

The court finds that Count 14 sufficiently alleges the elements and essential facts of the crime of falsifying books, records, and accounts in violation of 15 U.S.C. §§ 78(m)(b)(2)(A), 78m(b)(5),

78(ff), and 17 C.F.R. § 240.13b2-1. In addition, Count 14 establishes the parameters of the offense as occurring between September 1998 and April 2000. The government need not prove the exact date(s) that the crime occurred, but only prove that the crime occurred on a date that is reasonably near the one(s) alleged in the indictment. *United States v. Tsinhnahijinnie*, 112 F.3d 988, 991 (9th Cir. 1997) (citations omitted). As long as the allegations in the indictment are sufficiently narrowed in focus to give the defendant fair notice of the scope of the charges, exact dates need not be provided. *Id.* The court finds that Count 14 meets this requirement. However, the court orders the government to notify defendants ninety days prior to trial of the particular books, records, and accounts that defendants allegedly falsified. Defendant's motions are granted in part.

**Defendants Martin's and Stringer's Motions to Strike Sentencing Allegations (Docs. #152, #172)**

Defendants Martin and Stringer move to strike the sentencing allegations contained in the Indictment, arguing that the law does not permit their inclusion. Accordingly, they are merely surplusage and prejudicial, and should be stricken.

After the Supreme Court's decision in *Blakely v. Washington,* 124 S.Ct. 2531 (2004), it appeared that sentencing allegations were required to be in the indictment if the government wanted to seek the maximum sentence under the federal sentencing guidelines. Since then, the Court has issued *United States v. Booker/Fanfan*, 125 S.Ct. 738 (2005), wherein it appears that this is no longer the case. The Ninth Circuit has yet to address the issue.

Although the court is inclined to grant these motions, at this time, with trial eight months away, the court denies the motions. Defendants are granted leave to raise the issue again within sixty days of trial.

### **Defendants Martin's and Stringer's Motions to Dismiss Counts 24-47 (Docs. #158, #174**

Defendants Martin and Stringer assert that Counts 24 through 47 should be dismissed because they fail to allege materiality of the fraud. *See United States v. Omer*, 395 F.3d 1087, 1089 (9th Cir. 2005) (materiality of falsehood is an element of fraud) (citations omitted). Counts 24 through 36 allege that between January 1998 and April 2000, defendants devised a scheme to defraud and obtain money and property by way of false representations. Counts 37 through 41 allege wire fraud. Counts 42 through 46 charge Stringer and Samper with wire fraud. Count 47 charges all defendants with wire fraud.

As stated above, the Introduction of the Indictment asserts that defendants performed their fraudulent scheme "by making materially false and misleading statements" to the SEC, causing "FLIR's financial results to be materially misstated" for several quarters. *See* Indictment, ¶¶ 33, 34. The Indictment then proceeds to Count 1, which describes in detail the alleged conspiracy, sets forth the offenses defendants are charged with, including, with specificity, defendants' alleged misstatements. It chronicles the manner and means of the alleged conspiracy, including allegations that defendants knowingly filed "false financial statements with the SEC that materially misstated FLIR's true financial condition," disseminated "false earnings information via the news media and investors' conferences that materially misstated FLIR's true financial condition," and concealed "other material financial information from FLIR's auditors and lenders." *Id.* at p. 18.

Counts 2 through 23 allege that defendants gave various false statements, participated in fraudulent activity, and violated several federal securities laws. In Counts 24 through 47, the Indictment specifies that, as part of defendants' fraudulent activity, they engaged in several instances of mail and wire fraud. Each count begins with a reallegation of every allegation contained in the

Introduction, including the manner and means of the conspiracy. The mail fraud charges, Counts 24 through 36, assert that defendants knowingly and intentionally devised "a scheme and artifice to defraud FLIR, its Board of Directors, its shareholders, its auditors, the SEC, and the investing public . . . by means of false and fraudulent pretenses, representations and promises . . . for the purpose of executing the aforementioned scheme . . . ." *Id.* at pp. 68-69. Counts 37 through 47 allege several wire fraud accounts that are also based on the aforementioned scheme to defraud. Each count explicitly incorporates the Introduction and realleges the manner and means of the conspiracy.

At oral argument, defendants asserted that Federal Rule of Criminal Procedure 7(c)(1) does not permit the introduction of an indictment to be incorporated into a count. The government responded to the contrary, arguing that Rule 7(c)(1) does not prohibit a background section, and that it need not be stricken when it is relevant to the counts charged. The parties requested further briefing on this issue. The court reserves ruling on these motions.

### **Defendants Martin's and Stringer's Motions to Dismiss Counts for Duplicity (Docs. #160, #178)**

An indictment is duplicitous where a single count joins two or more distinct and separate offenses. *United States v. UCO Oil Co.*, 546 F.2d 833, 835 (9th Cir. 1976). Duplicity is disallowed because a jury may find the defendant guilty on one count without having reached a unanimous verdict on the commission of a particular offense. *Id.*

Defendants contend that Count 1 alleges a conspiracy to both violate a statute and to defraud the government. They further contend that "The Scheme to Defraud" as detailed in paragraphs 26 through 30, the "Concealment from Auditors of the Scheme to Defraud" as detailed in paragraphs 31 and 32, and the "False Statements in Public Findings" as detailed in paragraphs 33 through 35 are all duplicitous of Count 1 and several other counts.

An indictment charging a conspiracy under 18 U.S.C. § 371 should allege an agreement, the unlawful object toward which the agreement is directed, and an overt act in furtherance of the conspiracy. *Giese*, 597 F.2d at 1177. Because the conspiracy is the gist of the crime, the indictment does not need to state the object of the conspiracy with the detail that would be required in an indictment for committing the substantive offense. *United States v. Lane*, 765 F.2d 1376, 1380 (9th Cir. 1985).

Count 1 asserts that "defendants did agree with each other and with others, known and unknown to the grand jury, to defraud the United States and agencies thereof and commit offenses against them . . . ." Indictment at p. 16. It then reads that one of the ways in which defendants defrauded the United States and its agencies was by "impeding, obstructing, and defeating the lawful government functions of the SEC" in violation of 18 U.S.C. § 371. *Id.; see also* 18 U.S.C. § 371 (a person commits the offense of conspiracy if "two or more persons conspire either to commit any offense against the United States, or to defraud the United States . . . ."). Counts 2 through 23 allege various false statements, fraudulent activity, and violations of federal securities laws. Counts 24 through 47 allege several instances of mail and wire fraud. Counts 37 through 47 allege several instances of wire fraud.

If the government charges a defendant with a violation of a statute, and that statute permits two or more ways in which an offense may be committed, the government may allege all of the possible ways in the conjunctive in one count. *United States v. Booth*, 309 F.3d 566, 572 (9th Cir. 2002); *United States v. Bettencourt*, 614 F.2d 214, 219 (9th Cir. 1980) ("[A] jury may convict on a finding of any of the elements of a disjunctively defined offense, despite the grand jury's choice of conjunctive language in the indictment."). Where a count alleges conspiracy, "the established rule

is that a charge of conspiracy to commit more than one offense may be included in a single count without violating the general rule against duplicity." *United States v. Smith*, 891 F.2d 703, 713 (9th Cir. 1989). In other words, an indictment can set forth alternate means of committing a single offense, such as conspiracy, mail, wire, or bank fraud and charge it in one count. *See id.; see also* 18 U.S.C. §§ 1341, 1343, 1344 (the two prongs of the mail, wire, and bank fraud statutes – a scheme to defraud and false pretenses theory – provide alternative bases for conviction of the same offense, rather than two discrete offenses).

Here, the government alleges that defendants' conspiracy was highly sophisticated and complex and entailed an elaborate scheme to defraud, including mail, wire, and bank fraud. The court finds that defendants were properly charged with a single continuing agreement to defraud the United States and to commit the substantive offenses. The court also finds that the paragraphs concerning defendants' alleged scheme to defraud are not duplicated in the subsequent counts. In addition, the counts alleging mail, wire, and bank fraud – Counts 24 through 36, 37 through 41, 48 through 50, respectively – are not duplicitous. They permissibly charge each theory of mail, wire, and bank fraud in the conjunctive and each count only alleges one use of the mails, wires, or banks. Defendants' motions are denied.

### **Defendants Martin's and Stringer's Motions to Dismiss Counts for Multiplicity (Docs. #162, #176)**

An indictment is multiplicitous if it charges a single offense in different counts. The primary danger raised by multiplicitous indictments is the possibility that the defendant will receive more than one sentence for a single offense. *United States v. Matthews*, 240 F.3d 806, 818 (9th Cir. 2000) (citations omitted). Where there are two violations of the same statute, the issue of multiplicity is resolved by looking to what the legislature intended as the 'unit of prosecution' under the statute. *See*

*Sanabria v. United States*, 437 U.S. 54, 70 n.24 (1978). Conversely, where there are two statutes that proscribe the same conduct, double jeopardy is implicated and the test for multiplicity becomes whether each count requires proof of an additional fact that the other does not. *Id.*; *see also Blockburger v. United States,* 284 U.S. 299, 304 (1932).

Defendants argue that various counts in the Indictment are multiplicitous and should be dismissed, or, alternatively, the government should be compelled to elect between the multiplicitous counts. At oral argument, defendants expounded upon their argument and asserted that Counts 3-8 fail to assert each element of the charged offense. They contend that unless the Introduction is properly included in the Indictment, the counts by themselves fail to provide defendants adequate notice of the charges against them. As stated earlier, the parties requested additional briefing as to whether the Introduction should be stricken from the Indictment. The court reserves ruling on these motions until briefing is complete on that issue.

### **Defendants Martin's and Stringer's Motion for a Bill of Particulars (Docs. #164, #169**

Under Federal Rule of Criminal Procedure 7(f), the court may order the government to file a bill of particulars. The purpose of a bill of particulars is to enable the defendant to prepare an adequate defense and to protect against surprise and a subsequent prosecution for the same offense. It supplements the indictment with a more detailed recitation of the facts upon which the offenses are based. *United States v. Inryco, Inc.*, 642 F.2d 290, 295 (9th Cir. 1981) (citation omitted). The bill of particulars need not disclose all of the government's evidence or allege additional overt acts, but it should apprise the defendant of the theory of the government's case. *Cook v. United States*, 354 F.2d 529 (9th Cir. 1965) (citation omitted).

Defendants request bill of particulars that sets forth the names of the other alleged co-conspirators, the exact dates on which the conspiracy and scheme to defraud began and terminated, and a delineation of all other overt acts. The Ninth Circuit has found that a bill of particulars is not warranted under these circumstances. *United States v. DiCesare*, 765 F.2d 890, 897-98 (9th Cir. 1985).

At oral argument, the government conceded that it will rely only on the overt acts pled in the Indictment. The court finds that the seventy-six page Indictment and all other disclosures by the government adequately apprise the defendants of the nature of the charges against them and the government's theory of the case, such that defendants are able to adequately prepare a defense, there is no danger of unfair surprise, or fear that defendants will face subsequent charges on the same offense. *See Giese*, 597 F.2d at 1180 (full discovery obviates the need for a bill of particulars). There is ample substantial evidence, direct and circumstantial, contained in the Indictment to authorize a trier of fact to acquit or convict defendants. Except as stated earlier with respect to the particular books, records, and accounts that defendants allegedly falsified, the government is not obligated to provide a bill of particulars to defendants. These motions are denied.

**Defendant Stringer's Motion to Dismiss Counts Resulting from Unfair Conduct Before the Grand Jury (Doc. #180)**

Defendant alleges that Counts 48 through 50 alleging bank fraud are the result of the government's improper remarks that unfairly prejudiced the jury such that these counts should be dismissed.

Defendants have the constitutional right to be indicted by a fair and impartial grand jury. *United States v. Sears, Roebuck & Co.*, 719 F.2d 1386, 1391 (9th Cir. 1983). However, dismissal of an indictment is a dramatic step and is a generally disfavored remedy. *United States v. Rogers*,

751 F.2d 1074, 1076-77 (9th Cir. 1985) (dismissal of an indictment is warranted only in flagrant cases of prosecutorial misconduct); *see also Bank of Nova Scotia v. United States*, 487 U.S. 250, 256-57 (1988) (an indictment should be dismissed only where "the grand jury [has] been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice."). When the issue is raised prior to trial, the inquiry is whether the defendant has been prejudiced by the alleged misconduct. *Rogers*, 751 F.2d at 1076-77. Prejudice is demonstrated if it is clear that the violation substantially influenced the grand jury's decision to indict, or if there is grave doubt that the decision to indict was free from substantial influence by the prosecutor. *United States v. Mechanik*, 475 U.S. 66, 78 (1986) (O'Connor, J. concurring); *United States v. Chanen*, 549 F.2d 1306, 1309 (9th Cir. 1977) (an indictment may not be dismissed for prosecutorial misconduct absent prejudice to the defendant).

Here, defendant Stringer asserts that the prosecutor made prejudicial remarks and spoke on behalf of an absent witness. Defendant focuses particularly on a statement the prosecutor made in response to a juror's question to Raymond Evans (Evans), a manager for Bank of America. On November 20, 2003, the prosecutor empaneled a grand jury to hear testimony regarding the bank fraud counts. Evans testified about FLIR's lending history with the bank and said that FLIR had misstated its financial position and that the bank would not have made the loans that it had if FLIR had accurately represented its position. The prosecutor showed Evans a November 1999 account receivables report prepared by FLIR. Evans testified that he had not seen that report at the time of the November 1999 loan agreement, and that if he had, he would not have recommended to the bank that it approve the loan request. In response a juror stated:

> It seems like one of the biggest reasons for this big fraudulent activity is the misrepresentation of the receivables.

13 OPINION AND ORDER

> Have we ever gone back . . . and . . . seen how much was actually collected from the companies . . . in other words, was there [conversation] on the part of the person that was putting those numbers attached to those that would cause you to – in any company, I think, there's some ambiguity around the collectibility of receivables. But has anybody gone and taken a look at that?

Def. Stringer's Mem. in Supp. of Mot. to Dismiss, Attach. 3 at 40-41 (quoting from Excerpts of First and Second Superseding Indictment).

The prosecutor responded:

> In prior sessions, the Grand Jury has heard testimony, primarily from Special Agent Davis, that many of these sales listed on those account receivable forms were fictitious sales. They did not exist. So they truly were uncollectible.

*Id.* The prosecutor then proceeded to summarize testimony from previous witnesses, to which the juror responded, "Thank you. I was not here for their testimony, and that was what was behind my question." *Id.* at 42.

Special Agent Davis (Davis) testified before the grand jury on September 17, 2003, after which the first indictment was issued. He testified regarding the allegations in the indictment, the methods of the allege fraudulent revenue recognition, and alleged fraudulent and fictitious sales. The first indictment did not include bank fraud counts. Davis testified again on October 21, 2003, after which a superseding indictment was issued. Davis testified again on November 20, 2003, after which the Second Superseding Indictment was issued. A Third Superseding Indictment (the Indictment) was issued on November 23, 2004. Defendants were arraigned on the Indictment on March 28, 2005. The Second (and Third) Superseding Indictment include three bank fraud counts.

Defendant argues that, at no point during Davis' testimony, was Davis shown the November 1999 receivables report that was shown to Evans during the November 2003 grand jury hearing, and that, as such, he was not given an opportunity to discuss it or the alleged fictitious sales included therein. As a result, the prosecutor's statement before the November 2003 grand jury that the account receivable forms were fictitious sales constituted unfair conduct, warranting dismissal of the bank fraud counts. The court disagrees.

First, at the September 17, 2003 grand jury hearing, the grand jury heard from several witnesses and reviewed numerous documents. The witnesses, who included Steve Wynne (Wynne), FLIR's general counsel, Dwayne Richardson (Richardson), a partner at PriceWaterhouseCoopers, and several FLIR customers and employees, testified about FLIR's financial problems, defendants' falsification of FLIR's financial statements, and FLIR's fictitious sales. Second, the prosecutor presented the grand jury with nearly 100 exhibits, including FLIR's financial statements, accounts receivables charts, audit information, sales records, and customer information. Third, it is undisputed that Davis testified regarding the fictitious sales. However, defendant maintains that because Davis did not testify about a particular 1999 receivables report that was presented during Evans' testimony, the prosecutor's response to the grand jury was misleading. Upon review of the grand jury transcripts, the prosecutor's response to the grand juror's question mentioned that "*many* of the sales on the accounts receivables *forms* were false." *Id.* (emphasis added). This response was not limited to one receivables report, let alone the November 1999 report. It is reasonable to conclude that, given the testimony of the other witnesses and evidence presented to the grand jury, there was sufficient evidence to support the bank fraud counts, even in the absence of the prosecutor's statements.

Furthermore, in the first indictment, the grand jury found that defendants materially misrepresented FLIR's cash flow situation, and attempted to conceal the problem by increasing FLIR's line of credit. The increased line of credit was primarily based on the same false and misleading financial statements filed with the SEC and later disseminated to the investing public. So, although the September 2003 indictment did not contain a specific count for bank fraud, it did contain the factual allegations to support such a count, hence the inclusion of Counts 48 through 50 in the superseding indictments.

Based on the foregoing, the court finds that defendant has failed to show "that the prosecutor's conduct significantly infringed upon the ability of the grand jury to exercise its independent judgment," *United States v. Cederquist*, 641 F.2d 1347, 1353 (9th Cir. 1981), or "that the grand jury's independence was so undermined that it could not make an informed and unbiased determination of probable cause." *Sears*, 719 F.2d at 1392. Defendant's motion is denied and his request for an attendance role of the grand jurors is also denied.

## **CONCLUSION**

The court reserves ruling on Martin's and Stringer's Motions to Dismiss Counts 24-47 (Docs. # 158, 174) and Motions to Dismiss for Multiplicity (Docs. #162, 176). On the remaining motions, the court rules as follows: Stringer's and Martin's Motion to Dismiss for Duplicity (#160, 178) are denied; Martin's Motion to Dismiss the Indictment or to Strike (Doc. #145) is denied; Martin's Motions to Dismiss Counts 14, 15 (Docs. #148, 156) are granted in part; Martin's and Stringer's Motions to Strike the Sentencing Allegations (Docs. #152, 172) are denied; Martin's and Stringer's Motions for a Bill of Particulars (Docs. #164, 169) are denied except with respect to an

identification of the books, records, and accounts; and Stringer's Motion to Dismiss for Unfair Conduct (Doc. #180) is denied.

IT IS SO ORDERED.

Dated this 11 day of May, 2005.

                                              /s/Ancer L.Haggerty

                                                    Ancer L. Haggerty
                                         United States District Judge