UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,

               Plaintiff,               CR 03-432-HA

   v.

                                        OPINION AND ORDER

J. KENNETH STRINGER, *et al.*,

               Defendants.

HAGGERTY, Chief Judge:

      On September 23, 2004, the grand jury issued a third superseding indictment (hereinafter referred to as the Indictment) charging defendants J. Kenneth Stringer (Stringer), J. Mark Samper (Samper), and William N. Martin (Martin) with fifty counts of conspiracy and securities

fraud. Defendants are former executives of FLIR Systems, Inc. (FLIR). The Indictment alleges that defendants acted in concert to inflate FLIR's revenues through a series of fraudulent revenue recognition and accounting practices in an attempt to defraud FLIR, its Board of Directors, its shareholders, its auditors, and the United States Securities and Exchange Commission (SEC).

Defendants have filed numerous substantive motions. The court held eleven days of evidentiary hearings. Oral arguments were heard on November 15-16, 2005. The court rules on each in turn below.

**Motions to Dismiss for Pre-indictment Delay (Docs. #150, 232, 411)**

All three defendants filed separate motions to dismiss the indictment for pre-indictment delay in violation of the Fifth and Sixth Amendments to the United States Constitution and Federal Rule of Criminal Procedure 48(b) (Rule 48(b)). The Fifth Amendment guarantees against excessive pre-indictment delay. U.S. CONST. AMEND. V. The Sixth Amendment guarantees that the defendant enjoys the right of a speedy trial. U.S. CONST. AMEND. VI. Rule 48(b) provides that the court may dismiss an indictment "if unnecessary delay occurs in: (1) presenting a charge to a grand jury [after arrest] . . . or (3) bringing a defendant to trial."

In early June 2000, the SEC requested that the United States Attorney's Office in Portland open a criminal investigation of FLIR, Samper, and Stringer. On June 26, 2000, the government advised the SEC that it was pursuing an investigation of defendants for violations of the criminal securities fraud statutes. The government sought non-public documents from the SEC, which were subsequently disclosed. The SEC subpoenaed the defendants to provide sworn testimony. The defendants were advised of their Fifth and Sixth Amendment rights and were

given a standard form containing a warning that their testimony could be used against them in a criminal proceeding. Defendants gave lengthy, sworn testimony to the SEC.

Defendant Martin provided a Wells Submissions to the SEC setting forth his legal and factual defenses to the proposed enforcement action. Defendants Martin and Samper entered into Consents to Judgment and Judgments on the Complaint, in which they acknowledged that the consent was for the purpose of resolving the SEC proceeding only and did not resolve, affect or preclude any other proceeding which could be brought against them.

The SEC filed a Complaint on September 30, 2002. Defendants were indicted on September 17, 2003. Defendants argue that the original indictment was based upon the same facts and statutes that the SEC Complaint set forth, and that the SEC provided documents, transcripts, and interviews to the government throughout the SEC investigation.

Defendants argue that, based on the foregoing facts, the Fifth and Sixth Amendments, as well as Rule 48(b) compel dismissal of the Indictment.

On a motion to dismiss an indictment for pre-indictment delay under the Fifth Amendment, the court must first decide whether actual, non-speculative prejudice has been sufficiently proven. *United States v. Barken*, 412 F.3d 1131, 1134 (9th Cir. 2005). The defendant bears a "heavy burden" to show that any pre-indictment delay caused the defendant prejudice. *United States v. Martinez*, 77 F.3d 332, 335 (9th Cir. 1996). In *United States v. Huntley*, 976 F.2d 1287, 1290 (9th Cir. 1992), the Ninth Circuit stated, "The task of establishing the requisite prejudice for a possible due process violation is 'so heavy' that we have found only two cases since 1975 in which any circuit has upheld a due process claim." Similarly, the briefs in this case do not suggest that the list of successful pre-indictment delay challenges has

lengthened since *Huntley*. "The statute of limitations, not the due process clause, is generally the protection against preindictment delay." *Id.* at n.1.

A defendant's proof of actual prejudice must be concrete, definite, and not speculative. *Martinez,* 77 F.3d at 335 (citing *United States v. Sherlock*, 962 F.2d 1349, 1353-54 (9th Cir. 1992)). The proof must demonstrate "exactly how the loss of evidence or witnesses was prejudicial." *Barken*, 412 F.3d at 1134. Even if the court finds actual prejudice, the prejudice must, when balanced against the government's reasons for the delay, "offend those fundamental conceptions of justice which lie at the base of our civil and political institutions. " *Sherlock,* 962 F.2d at 1353-54 (citation and quotation omitted).

In determining whether a defendant's Sixth Amendment right has been violated by a pre-indictment delay, the court applies a four-part balancing test: (1) the length of the delay; (2) the government's reason for the delay; (3) the defendant's assertion of his or her speedy trial rights; and (4) prejudice to the defendant. *United States v. Gregory*, 322 F.3d 1157, 1161 (9th Cir. 2003) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). The purpose of the Sixth Amendment is to protect a defendant against undue oppression and excessive incarceration prior to trial, to minimize anxiety and concern that is attendant with public accusation, and to limit prejudice to the defendant's case caused by inordinate delay. *Dickey v. Florida*, 398 U.S. 30, 37-38 (1970). Accordingly, the Sixth Amendment is triggered only after a defendant has been charged or arrested. *United States v. Candelaria*, 704 F.2d 1129, 1131-32 (9th Cir. 1983) (right to speedy trial does not apply until a defendant has been charged); *United States v. Simmons*, 536 F.2d 827, 830 (9th Cir. 1976) (Sixth Amendment does not apply to delay between the commission of the offense and the indictment).

Rule 48(b) confers great discretion on the district judge to dismiss an indictment for prosecutorial delay not amounting to a Sixth Amendment violation. *Huntley*, 976 F.2d at 1291. However, dismissal should be imposed only in "extreme circumstances, after exercising caution and after forewarning the government of the consequences of further delay." *Barken*, 412 F.3d at 1136 (citing *United States v. Sears, Roebuck & Co.*, 877 F.2d 734, 737 (9th Cir. 1989)). Similar to the Sixth Amendment, Rule 48(b) applies only after the defendant has been arrested. *Id*. (citing *United States v. Mays*, 549 F.2d 670, 674 n.4 (9th Cir. 1977)).

Defendants assert they have been prejudiced because they provided days of testimony, numerous documents, including personal financial documents, a factual and legal defense to the charges, and, in the case of Martin and Samper, entered into a consent decree, none of which could have been obtained by the prosecutor had the original indictment been issued prior to the SEC actions.

Defendants also argue that the government enhanced its advantage by delaying the original indictment. Defendants argue that the prosecutor collected countless interviews and documents while the SEC proceeded in its enforcement action against Martin. The prosecutor advised the SEC in June 2000 that it was pursuing an ongoing investigation of defendants, but the prosecutor did not issue an indictment until the fall of 2003. This three-year delay, defendants argue, severely prejudiced defendants, warranting dismissal of the Indictment.

<u>Neither the Sixth Amendment nor Rule 48(b) applies</u>

As noted above, Rule 48(b) is explicitly limited to post-arrest situations. *Barken*, 412 F.3d at 1136. In addition, the Sixth Amendment speedy trial provision is triggered only after a defendant becomes an accused, most often through an arrest. *United States v. Marion*, 404 U.S.

307, 321 (1971). Here, defendants allege only pre-indictment delay, which occurred before there was any arrest or criminal charge. Rule 48(b) and the Sixth Amendment are inapplicable to delays that occurred during the time that the government was pursuing its investigation, prior to the first indictment being issued.

<u>Defendants fail to show prejudice in violation of the Fifth Amendment</u>

There is insufficient concrete and definite evidence that the delay between the SEC proceedings and the first indictment caused such a loss of testimony or evidence as to reach the high burden of prejudice required for a violation of due process due to pre-indictment delay.

Defendants argue they have been prejudiced due to changed testimony by other FLIR employees. Defendants note that the testimony of several witnesses to the SEC was neutral or helpful to defendants, whereas the testimony of those same witnesses to the FBI years later was harmful to defendants. Defendants fail to show that this change in testimony was caused by culpability on the part of the government. *See Sherlock*, 962 F.2d 1355 (the defendant must show that the loss of evidence or testimony is a result of the government's misconduct). Defendants also fail to show that the witnesses' recollection would have been unchanged if they were questioned by the FBI at an earlier date.

Even if defendants were able to show that the delay resulted in the loss of key testimony, the court still finds this insufficient to show actual prejudice. *See Barken*, 412 F.3d at 1135 (finding that the defendant failed to show actual prejudice, despite a delay of five years, death of one potential witness, loss of another witness due to his relocating out of the country, destruction of potentially exculpatory evidence, and destruction of the physical evidence at issue); *United States v. Ross*, 123 F.3d 1181, 1186 (9th Cir. 1997) (finding that the defendant failed to show

actual prejudice, despite a delay of four and one half years, death of four potential witnesses, and alleged memory loss of two potential witnesses). Furthermore, defendants have failed to show that any pre-indictment delay has unfairly impaired their ability to defend themselves.

The court finds that defendants' alleged prejudice does not rise to a level implicating the Due Process Clause. Accordingly, because the court finds that defendants failed to sufficiently establish prejudice, it is unnecessary to reach the question of whether the delay offended fundamental conceptions of justice. *United States v. Valentine*, 783 F.2d 1413, 1416-17 (9th Cir. 1986).

**Motions for Severance (Docs. #154, 170)**

Generally, defendants who are jointly charged should be jointly tried. *Zafiro v. United States*, 506 U.S. 534, 537 (1993) ("Joint trials play a vital role in the criminal justice system" by promoting efficiency and serving "the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.") (citations omitted). However, Federal Rule of Criminal Procedure 14 recognizes that even when counts or defendants are properly joined under Federal Rule of Criminal Procedure 8, severance may be appropriate to avert prejudice to a defendant. "The court must weigh, case by case, the advantage and economy of a joint trial to the administration of justice against possible prejudice to a defendant." *United States v. Donaway*, 447 F.2d 940, 943 (9th Cir. 1971) (citations omitted). The court has "wide discretion" in ruling on a motion for severance. *United States v. Candoli*, 870 F.2d 496, 510 (9th Cir. 1989).

Severance is appropriate where the jury is unable to compartmentalize the evidence against the defendants, *see United States v. Johnson*, 297 F.3d 845, 859 (9th Cir. 2002); where the evidence admissible against one defendant but not against another defendant would have a

prejudicial overlapping effect, *see Candoli*, 870 F.2d at 510; where conspirators' defenses are mutually exclusive, *see United States v. Gonzalez*, 749 F.2d 1329, 1333-34 (9th Cir. 1984); or where the evidence against one defendant is disproportionate in relation to another defendant. *United States v. Rasheed*, 663 F.2d 843, 844-45 (9th Cir. 1981).

Stringer's Motion

Stringer asserts that his defense is inconsistent with those of his co-defendants. Stringer claims that, unknown to him, agreements were entered into by Martin and Samper and other unindicted FLIR employees. He will show that during the period alleged in the Indictment, Martin and Samper were overextended in their personal finances and had personal motives to siphon funds from FLIR, as well as the means and opportunity to do so. He will prove his lack of knowledge by referring to his conduct in response to litigation. For instance, when Steve Palmquist, a former FLIR vice-president, threatened FLIR that he would report it for SEC violations if it did not settle with him, Stringer rejected Palmquist's proposal. Stringer will argue at trial that he did so because he was unaware of any fraudulent accounting practices by FLIR.

Conversely, Stringer contends that Martin and Samper will defend their cases by attempting to defeat Stringer's defense. To wit, Martin and Samper will argue that Stringer had knowledge of all workings of FLIR, that he was a former CFO and CPA, and that he inappropriately pressured them to recognize revenue in sham transactions.

Stringer also argues that a joint trial would prevent him from presenting an individual defense. He asserts that he intends to present relevant, exculpatory evidence that the government may not be able to introduce against Samper or Martin because it would be unduly prejudicial. Specifically, as previously noted, Stringer intends to introduce evidence regarding Samper's and

Martin's financial affairs and that they were both personally financially overextended. This evidence, Stringer argues, is likely inadmissible in the government's case-in-chief against Martin and Samper because it is unfairly prejudicial.

Stringer also intends to present relevant character evidence that may be considered unfairly prejudicial to Samper and Martin. Stringer hopes to show that his co-defendants engaged in fraudulent business practices to enhance their own profiles and job security and to support their own advancement at FLIR. He also seeks to admit evidence of the settlement agreement (consent decrees) reached by both Samper and Martin with the SEC. Stringer intends to seek this evidence as proof that Samper and Martin confessed to fraudulent activity, and to show that although Stringer was offered to settle with the SEC, he declined.

Stringer's final argument in support of severance is that if either Samper or Martin decline to testify, Stringer's Confrontation Clause rights will be violated.

This Motion is well taken. The court finds the potential prejudice to Stringer outweighs any advantages and economy of a joint trial. Much of the evidence Stringer intends to offer is at risk of being excluded in a joint trial as too prejudicial to Martin and Samper. In *Zafiro*, the Supreme Court stated that severance is proper "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." 506 U.S. at 539. A specific trial right includes the right to full cross-examination, to present an individual defense, and to confront the accuser. *United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir. 1980). The inability to present this evidence would violate Stringer's right to an individual defense, and admission of the evidence, even with limiting instructions, would be too prejudicial to Samper and Martin. Stringer's

Page 9 -- Opinion and Order

defense is in direct conflict with that of Samper and Martin. It is improbable that a jury could accept Stringer's defense and also accept the defense of Martin or Samper.

Martin's Motion

The basis of Martin's motion is the mutually antagonistic defense with Stringer and the prejudicial evidence Stringer intends to offer at trial. There is no evidence, and Martin has not specifically alleged, that a joint trial with defendant Samper will be prejudicial to Martin. Because defendant Stringer's Motion for Severance is granted, the threat of prejudice to Martin from a joint trial is obviated. Accordingly, Martin's Motion is denied as moot.

**Motions for a Pre-Trial Taint Hearing (Docs. #264 & 412)**

Defendants Stringer and Samper allege that the prosecution used techniques they knew would yield false information, thereby tainting the witness testimony and violating defendants' due process rights. Defendants argue that the prosecution altered witness testimony by providing prejudicial documents and testimony of other witnesses prior to obtaining the statements of the tainted witnesses.

Several witnesses gave testimony to the SEC that was favorable or neutral to defendants, and later gave testimony to the FBI that was harmful to defendants. Defendants claim this change in testimony was caused by improper coaching on the part of the prosecution. Witnesses were given a copy of the SEC Complaint prior to being questioned by the FBI. Defendants argue that the unproven allegations contained in the SEC Complaint were accepted as fact by the witnesses because they were presented by the prosecutor, a person generally accorded respect. This then caused the witnesses to reconsider their own recollection of the facts and alter their testimony.

The government argues that defendants' allegations regarding the witnesses relate to bias and credibility and can be addressed through cross examination. The issue of witness credibility is separate from that of competency to testify and does not require a pre-trial evidentiary hearing. Moreover, the government notes that the SEC Complaint is a public document and is available on the internet, and claims having witnesses review it is not prosecutorial misconduct or witness tampering.

The veracity of a witness is to be tested by cross-examination, and credibility is to be determined by a jury. *Hoffa v. United States*, 385 U.S. 293, 311-12 (1966). Cross-examination has "always been regarded as the greatest safeguard of American trial procedure." *United States v. Inadi*, 475 U.S. 387, 410 (1986); *see also Thomas v. United States*, 156 F. 897, 914 (8th Cir. 1907) (noting that cross-examination is "the great safeguard against fraud, false statements, and half truths"). "Cross-examination and argument are the primary tools for addressing improper witness coaching." *United States v. Sayakhom*, 186 F.3d 928, 945 (9th Cir. 1999); *see also Geders v. United States*, 425 U.S. 80, 89-90 (1970) (noting improper witness coaching can be dealt with by "skillful cross-examination to discover whether 'coaching' occurred").

Defendants have transcripts of the witnesses' prior statements and their later testimony to the FBI. The witnesses are available for pre-trial interviews and for cross-examination at trial. Defendants' due process rights are protected through the opportunity for cross-examination and argument regarding the alleged witness coaching.

## **CONCLUSION**

Defendant Martin's Motion to Dismiss for Pre-indictment Delay/Speedy Trial (Doc. #150) is DENIED. Defendant Stringer's Motion to Dismiss for Pre-indictment Delay/Speedy

Trial (Doc. #232) is DENIED. Defendant Samper's Motion to Dismiss for Pre-indictment Delay/Speedy Trial (Doc. #411) is DENIED. Defendant Stringer's Motion for Severance from his Codefendants (Doc. #170) is GRANTED. Defendant Martin's Motion for Severance from Other Defendants (Doc. #154) is DENIED. Defendant Stringer's Motion for a Pre-trial Taint Hearing (Doc. #264) is DENIED. Defendant Samper's Motion for a Pre-trial Taint Hearing (Doc. #412) is DENIED.

IT IS SO ORDERED.

Dated this __9__ day of January, 2006.

/s/Ancer L.Haggerty
Ancer L. Haggerty
United States District Judge